UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cv-00064-FDW-DSC

| | |
|---|---|
| STEVEN M. ROVNYAK, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CITY OF CHARLOTTE and MEDIC )<br>MECKLENBURG EMS AGENCY, )<br>)<br>Defendants. )<br>) | ORDER |

THIS MATTER is before the Court on Defendant City of Charlotte's ("**City**") Motion to Dismiss, (Doc. No. 9), and Defendant Medic Mecklenburg EMS Agency's ("**Medic**") Motion to Dismiss, (Doc. No. 6), filed on March 17, 2022, and March 16, 2022, respectively. The Motions have been fully briefed and are ripe for review. For the reasons set forth below, the Court GRANTS Defendants' Motions.

### I. BACKGROUND

The allegations of Plaintiff's Complaint are outlined herein. Plaintiff filed this action on December 22, 2021, against Defendants, asserting the following claims: (1) violations of Titles II and III of the Americans with Disabilities Amendments Act (the "**ADA**") and Section 504 of the Rehabilitation Act of 1973; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress. (Doc. No. 1-2).

For the past twenty-five years, Plaintiff has suffered from a documented mood disorder that requires him, per his doctors' recommendation, to massage his muscles and stretch several times a day. (Doc. No. 1-2, pp. 1-2). For twenty years, Plaintiff has massaged his muscles, including those in his inner thighs, in public spaces. Id. On December 27, 2018, while traveling

1

from Indianapolis, Indiana to Charlottesville, Virginia, Plaintiff had a layover in Charlotte Douglas International Airport. Id. at 2. While waiting for his connecting flight, Plaintiff stretched and massaged his inner thigh muscles within view of other patrons for approximately forty-five minutes before he was approached by a Charlotte Mecklenburg Police Officer. Id. In the presence of onlookers, the officer stated employees of Defendant, Medic, were going to check Plaintiff's vital signs and asked him if he had a medical condition and whether he was on medication. Id. Plaintiff notified the officer of his disorder and explained his need to massage his inner thighs. Id. The officer asked for Plaintiff's identification card and returned it after relaying the information over his radio. Id. Plaintiff asserts he did not feel free to leave and was prohibited from doing so while he waited for Medics arrival. Id.

Soon after, an airport employee ("**City's First Employee**") and two employees of Medic arrived. Id. at 3. City's First Employee told City's officer there had been several complaints about Plaintiff rubbing his inner thighs and told Plaintiff he should do such activity in the men's restroom. Id. After notifying employees of Medic of his disability, they asked Plaintiff a series of four questions with the last being, "How many quarters are in a dollar fifty?" Id. Plaintiff asserts prior to asking the fourth question, Medic employees paused and began to approach him on both sides so as to confine him so he could not leave. Id. After asking the fourth question, employees of Medic took a half step back. Plaintiff asserts City's First Employee explained Plaintiff was on warning and "that a similar incident would result in a ban from the Airport." Id. Then, City's First Employee told Plaintiff he was free to leave. Id.

Later, while seated in the boarding area, another airport employee ("City's Second Employee") approached Plaintiff and insisted Plaintiff follow him. Id. at 4. Plaintiff told City's Second Employee he was waiting to board his flight and the City's Second Employee insisted

2

Plaintiff follow him to a gate agent to board the plane during preboarding time for passengers who identify as having special needs. Id. Plaintiff asserts he was not accompanied past the gate and was left alone to walk a considerable distance and did not obviously know which jetway to board. Id.

Plaintiff asserts Defendants threatened and detained him without authority based on his disability. Id. Plaintiff asserts the occurrences caused him to experience feelings of panic, distress, anxiety, racing thoughts, mental anguish, and emotional distress; all of which he alleges persists to this day. Id. Despite this, Plaintiff continues to use the Charlotte Airport, but states he suffers under the threat of ban every time he travels. Id. at p. 7.

Plaintiff now seeks relief under Titles II and III of the ADA, Section 504 of the Rehabilitation Act of 1973, and Intentional Infliction of Emotional Distress or, in the alternative, Negligent Infliction of Emotional Distress under North Carolina law. Id.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) inquiry is limited to determining if the pleader's allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a 12(b)(6) motion to dismiss, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists only when the factual content allows a court to draw the reasonable inference that the defendant is liable for the misconduct. Iqbal 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the party asserting the claim. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014).

In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pled factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

## III. ANALYSIS

### A. Title II of the ADA ("Title II")

Plaintiff first asserts Defendants violated his rights under Title II of the ADA. Specifically, Plaintiff asserts Defendants:

> 48. denied [him] equal services, programs, or activities and public accommodation due to his disability . . . [and] treated [him] in a different and inferior manner than people without a disability and retaliated against [him] due to his disability.
>
> 49. committed acts and omissions toward [him] . . . based on mere speculation, stereotypes, or generalizations about individuals with disabilities of this nature.
>
> 50. discriminated against [him] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.
>
> 51. excluded [him] from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against [him] on the basis of his disability. . . ."

(Doc 1-2 p. 8). Defendants, in response, argue Plaintiff's Complaint fails to assert plausible allegations that Defendants either excluded him from or denied him of a benefit or discriminated against him in any way. (Doc. Nos. 6, 9).

To prevail on a claim for a violation of Title II, a plaintiff must allege: (1) he has a disability as defined by the ADA, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such

4

service, program, or activity, or otherwise discriminated against, on the basis of his disability. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005) (citing, *Baird v. Rose,* 192 F.3d 462, 467–70 (4th Cir. 1999)); 42 U.S.C. § 12132).

In his Complaint, Plaintiff fails to specifically allege (a) what service, program, activity, or public accommodation he was denied or excluded from; or (b) how Defendants treated him differently than a person without a disability. See (Doc. No. 1-2). In fact, as alleged, City actually permitted Plaintiff to preboard the plane, a benefit which Plaintiff did not request and was not otherwise eligible. Id. at pp. 4-5. Moreover, Plaintiff admits he continues to use Charlotte Douglas Airport, without restriction, for his travels. Id. at p. 5. Accordingly, during and since the alleged incident, Plaintiff has not been denied or excluded from any service, program, activity, or public accommodation at Charlotte Douglas Airport, nor has he been discriminated against on the basis of his disability. Id.; see Constantine, 411 F.3d at 498. Based on the forgoing, the facts alleged in Plaintiff's Complaint are insufficient to support his claim for a violation of Title II of the ADA, and the Court finds dismissal of this claim appropriate.

### i. Section 504 of the Rehabilitation Act of 1973 ("Section 504")

The Court now moves to Plaintiff's Section 504 claim. The elements of a Section 504 claim are nearly identical to those required in Title II. Constantine, 411 F.3d at 495. Accordingly, in order to establish a claim pursuant to Section 504, a plaintiff must allege: (1) he has a disability as defined by the ADA, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. Id. Section 504, however, requires the alleged denial of benefits be based *solely* on an individual's disability Id. For the reasons set forth above as to Plaintiff's Title II claim, the Court also finds

Plaintiff has failed to state a claim under § 504.

> ## ii. Title III of the ADA ("Title III")

Next, the Court moves to Plaintiff's Title III claim. Title III provides, in relevant part, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 41 U.S.C. § 12182(a). Accordingly, to prevail under Title III, a plaintiff must show: (1) he is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against him because of his disability. J.D. by Doherty v. Colonial Williamsburg Found., 925 F.3d 663, 670 (4th Cir. 2019). "The term 'place of public accommodation,' applies only to private entities providing public accommodations, not to public entities." Costello v. Univ. of N. Carolina at Greensboro, 394 F. Supp. 2d 752, 759 (M.D.N.C. 2005) (see also PGA Tour Inc. v. Martin, 532 U.S. 661, 677 (2001)).

Based on the aforementioned well-settled law, City contends, and the Court agrees, it is not subject to Title III. Id. Here, it is undisputed that City is a *public* entity, and therefore, not a private entity. (Doc. No. 1-2, pp. 1). Accordingly, Plaintiff's Title III claim against City must be dismissed.

Medic, on the other hand, argues Plaintiff's Complaint does not sufficiently plead that it discriminated against Plaintiff on the basis of his disability. (Doc. No. 9, p. 6). In his Complaint, Plaintiff asserts Medic violated his ADA rights by unreasonably asking "How many quarters are in a dollar-fifty" and appearing to confine him so as to make him feel unfree to leave. (Doc 1-2, p. 3, 19). He asserts, in conclusory fashion, he was discriminated against based on his disability because he was denied equal services, program, or activities and public accommodation. Id. at 8.

As set forth above, the third element of a Title III claim requires the plaintiff to show the defendant discriminated against him because of his disability. Id. Thus, the third element depends on a proper construction of the term "discrimination." Title III defines "discrimination" as a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, *unless the entity can demonstrate that making such modifications would fundamentally alter the nature* of such goods, services, facilities, privileges, advantages, or accommodations." Martin, 532 U.S. at 677 (citing § 12182(b)(2)(A)(ii)). The Supreme Court has explained the following three inquiries are critical in evaluating a Title III claim: (1) whether the requested modification is "necessary" for the disabled individual; (2) whether the requested modification is "reasonable"; and (3) whether the requested modification would "fundamentally alter the nature" of the public accommodation. Martin, 532 U.S. at 683.

Again, even assuming Plaintiff has sufficiently established the first two elements of his Title III claim, his claim fails at element three. Plaintiff's Complaint is filled with conclusory statements asserting Medic violated Plaintiff's ADA rights and it does not contain sufficiently pled facts to support his Title III claim. 42 U.S.C. § 12182 (1990). He does not assert any facts regarding his asking or and being denied a modification for a public accommodation. Plaintiff has therefore failed to meet his burden of showing he was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity. C.f., Martin, 532 U.S. at 690 (finding the plaintiff adequately pled his disability discrimination claims where his complaint set forth facts of a specific instance in which he requested and was denied accommodations for his walking disability and subsequently prevented from participating

7

in a golf tournament). Accordingly, Plaintiff's Complaint fails to state a claim for a violation of Title III of the ADA against Defendants, and the claim must be dismissed.

### b. Intentional Infliction of Emotional Distress

Plaintiff's Complaint also includes a claim against Defendants for intentional infliction of emotional distress ("**IIED**"). (Doc. No. 1-2, p. 8). To prevail on a claim for IIED under North Carolina law, Plaintiff must show Defendants intentionally or recklessly engaged in (1) extreme and outrageous conduct (2) that caused (3) severe emotional distress. Jackson v. Kimel, 992 F.2d 1318, 1324 (4th Cir. 1993) (citing, *Hogan v. Forsyth Country Club Co.,* 340 S.E.2d 116, 119 (N.C. Ct. App. 1986)). The alleged act must be "done with the intention of causing emotional distress or with reckless indifference to the likelihood that emotional distress may result." Norton v. Scotland Mem'l Hosp., Inc., 793 S.E.2d 703, 708 (N.C. Ct. App. 2016) (citing, *Dickens* v. Puryear, 276 S.E.2d 325, 333 (N.C. Ct. App. 1981) (citations, quotations, and ellipsis omitted)). Accordingly, "[a] defendant is liable for [IIED] when he desires to inflict severe emotional distress or *knows such distress is certain, or substantially certain, to result from his conduct* or where he acts recklessly in deliberate disregard of a high degree of probability the emotional distress will follow, and the mental distress does in fact result." Norton, 793 S.E.2d at 708. "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Chidnese v. Chidnese, 708 S.E.2d 725, 738 (N.C. Ct. App. 2011) (citing, *Johnson v. Colonial Life & Accident Ins. Co.,* 618 S.E.2d 867, 872 (N.C. Ct. App. 2005)); *Guthrie v. Conroy,* 567 S.E.2d 403, 408–09 (N.C. Ct. App. 2002)).

"The determination of whether conduct rises to the level of extreme and outrageous behavior is a question of law." Chidnese, 708 S.E.2d at 738 (quoting, *Foster v.*

8

*Crandell*, 638 S.E.2d 526, 537 (N.C. Ct. App. 2007)). Thus, it is the Court's responsibility to determine whether the alleged conduct may reasonably be regarded as extreme and outrageous behavior before the issue can be given to the jury. Johnson v. Bollinger, 356 S.E.2d 378, 382 (N.C. Ct. App. 1987) (citing *Briggs v. Rosenthal,* 327 S.E.2d 308, 311 (N.C. Ct. App. 1985)). "Extreme and outrageous is a high bar; mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are not enough." Bollinger, 356 S.E.2d at 382.

As to City, Plaintiff asserts, in conclusory fashion, the following conduct rises to the level of extreme and outrageous behavior: detaining, embarrassing, and humiliating Plaintiff without authority, consent, or reasonable cause; expressing the threat of a ban, assaulting, and harassment based on disability. (Doc. 1-2, pp. 8). Based on a thorough review of the record, it is clear to the Court that Defendants actions as alleged in Plaintiff's Complaint are not extreme or outrageous as a matter of law. Indeed, Plaintiff mistakenly cites to case law that further supports the Court's finding.[1]

In a similarly unavailing argument against Medic, Plaintiff claims Medic's outrageous conduct was in asking Plaintiff a fourth question and holding him against his will. Notably, however, Plaintiff does not raise a claim for false imprisonment in his Complaint. Consistent with the remainder of his Complaint, Plaintiff's claim for IIED relies on conclusory allegations, and Plaintiff fails to sufficiently assert conduct by Medic to support a finding of outrageous conduct. Plaintiff also fails to assert any facts establishing Medic knew or had a substantial certainty

---

[1] See e.g., West v. King's Dep't Store, Inc., 365 S.E.2d 621, 624 (N.C. Ct. App. 1988), the Court of Appeals of North Carolina found a department store manager's conduct outrageous when he continuously and loudly accused the plaintiffs of stealing from the store, despite being made aware that the elder woman was receiving outpatient care for her anxiety. Here, City's threat to interdict Plaintiff from the airport if he did not massage his inner thighs in the restroom does not amount to outrageous conduct because the demand was singular, not made loudly, and is not the type of conduct that "exceeds all bounds usually tolerated by a decent society" to satisfy the first element of the tort.

9

Plaintiff would suffer severe emotional distress as a result of standard procedural questions.[2]

For the reasons set forth above, Plaintiff's Complaint also fails to state a plausible claim for relief against Defendants for IIED, and Defendants' Motions to Dismiss, to the extent they seek dismissal of Plaintiff's IIED claim, are granted.

### c. Negligent Infliction of Emotional Distress

Finally, the Court moves to Plaintiff's claim for negligent infliction of emotional distress ("**NIED**"). Defendants contend, and the Court agrees, dismissal of Plaintiff's NIED claim is appropriate because Plaintiff has failed to assert facts that substantiate the necessary elements needed for a NIED claim. (Doc Nos. 6 and 9). To establish a claim for NIED under North Carolina law, a plaintiff must show: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable such conduct would cause the plaintiff severe emotional distress; and (3) the conduct did in fact cause the plaintiff severe emotional distress. Johnson v. Scott, 528 S.E.2d 402, 404 (N.C. Ct. App. 2000) (quoting Johnson v. Ruark Obstetrics and Gynecology Assoc., 395 S.E.2d 85, 97 (N.C. Ct. App.1990)). North Carolina courts have consistently held the first element of an NIED claim requires allegations that the "defendant failed to exercise due care in the performance of some legal duty owed to [the] plaintiff under the circumstances[.]" Horne v. Cumberland Cnty. Hosp. Sys., Inc., 746 S.E.2d 13, 19 (N.C. Ct. App. 2013) (citing, *Guthrie v. Conroy,* 567 S.E.2d 403, 410–11 (N.C. Ct. App. 2002)).

Here, Plaintiff's Complaint fails to refer to any duty owed to him by Defendants. This omission alone is fatal to Plaintiff's NIED claim. See Guthrie., 567 S.E.2d at 411 ("[P]laintiff

---

[2] See e.g., Piro v. McKeever, 782 S.E.2d 367, 372 (N.C. Ct. App. 2016), the plaintiff raised a claim for intentional infliction of emotional distress after a social worker conducting therapy sessions and forensic interviews of his minor son engaged in "overly suggestive questioning". The Court of Appeals of North Carolina ruled the social worker's conduct did not meet the threshold of extreme and outrageous conduct. . . ." Again, here employees of Medic asked standard procedural questions as described by their job.

10

alleges no duty that [defendant] owed plaintiff. . ... Absent a breach of duty of care, plaintiff's suit against [defendant] for NIED cannot be maintained."). Moreover, beyond the conclusory claim that "Defendants' conduct . . . constitutes negligent infliction of emotional distress . . ." (Doc. No. 1-2, p. 10), Plaintiff's Complaint recites only *intentional* conduct on the part of Defendants. Allegations of intentional conduct, such as Plaintiff's, even when construed liberally on a motion to dismiss, cannot satisfy the critical element of an NIED claim—negligence. *See Sheaffer v. County of Chatham,* 337 F.Supp.2d 709, 734 (M.D.N.C. 2004) ("Even taking all these allegations as true, they demonstrate intentional acts for which Plaintiff has made other claims; they do not show negligent acts required for a claim of NEID."). Plaintiff, therefore, has failed to establish any duty owed to him by Defendants and has failed to properly plead an element essential to his NIED claim. For these reasons, Plaintiff's NIED claim must also be dismissed.

## B. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motions to Dismiss, (Doc. Nos. 6, 9), are GRANTED and Plaintiff's Complaint, (Doc. No. 1-2), is hereby DISMISSED WITHOUT PREJUDICE to Plaintiff refiling his Complaint in accordance with this Order and the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Signed: July 5, 2022

Frank D. Whitney
United States District Judge